FILED
United States Court of Appeals
Tenth Circuit

February 1, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

CHARLENE BURNETT,

      Plaintiff-Appellant,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
JAMES H. WOODALL,

      Defendants-Appellees.

No. 09-4216

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:09-CV-00069-DAK)**

Brian W. Steffensen of Salt Lake City, Utah, for Plaintiff-Appellant.

Peter J. Salmon of Pite Duncan LLP, San Diego, California, for Defendant-Appellee James H. Woodall.

Before **LUCERO**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Charlene Burnett filed this action against James H. Woodall, Mortgage Electronic Registration Systems, Inc., and fifty unnamed individuals.  The complaint asserted violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Utah Consumer Sales Practices Act (USCPA), Utah Code Ann. § 13-11-1 *et seq.*, and related claims arising out of the foreclosure of her home.  Ms. Burnett appeals the district court's dismissal of her complaint under Fed. R. Civ. P. 12(b)(6).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In April 2007, Ms. Burnett purchased a home in Weber County, Utah.[1]  To finance this purchase, she obtained a loan from Academy Mortgage Corp.  She

---

[1] We derive the facts from Ms. Burnett's complaint and three exhibits attached to Mr. Woodall's memorandum in support of his motion to dismiss the complaint.  The three exhibits are the trust deed signed by Ms. Burnett, a Substitution of Trustee form appointing Mr. Woodall as successor trustee under the trust deed, and a Notice of Default filed by Mr. Woodall concerning Ms. Burnett's default under the trust deed.  The district court relied upon all three documents in resolving the motion to dismiss.  Ms. Burnett referenced the documents in her complaint but did not include them as attachments.  "Generally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon."  *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005).  "We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."  *Id.* at 1253-54.  Ms. Burnett does not dispute the authenticity of any of the three documents.

signed a promissory note for repayment of the loan and secured it with a trust deed to the property. The trust deed identified Ms. Burnett as "Borrower," Academy Mortgage Corp. as "Lender," Mortgage Electronic Registration Systems, Inc. (MERS) as "beneficiary . . . (solely as nominee for Lender and Lender's successor and assigns)," and Mountain View Title & Escrow as "Trustee." Aplt. App., vol. I at 38, 39. The trust deed also provided that MERS could foreclose on and sell Ms. Burnett's property should she default on her payment obligations:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, *the right to foreclose and sell the Property*; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.* at 40 (emphasis added).

Beginning in August 2008, Ms. Burnett defaulted on her obligations under the trust deed by failing to make the required minimum monthly payments. On November 21, 2008, MERS filed a Substitution of Trustee form in Weber County. The form provided notice that MERS appointed Mr. Woodall, a Utah attorney, as successor trustee under the trust deed. Mr. Woodall filed a Notice of Default that same day. Ms. Burnett subsequently demanded that Mr. Woodall release the Notice of Default but he refused, indicating he intended to proceed with a

-3-

trustee's sale of her property. The sale occurred on May 19, 2009.

On the day of the sale, Ms. Burnett filed this action against MERS, Mr. Woodall, and fifty unidentified individuals who were unknown to Ms. Burnett. She sought damages and declaratory relief for alleged violations of the FDCPA and the UCSPA, a breach of duty by Mr. Woodall, a claim predicated on § 57-1-31 of the Utah Code, which governs trust deeds, and a slander of title claim. Ms. Burnett did not serve MERS nor any of the unidentified individuals named as defendants.

Mr. Woodall moved to dismiss the complaint for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The district court granted the motion, dismissing all of Ms. Burnett's claims against Mr. Woodall and dismissing the case with prejudice.

## II.

### A. PLEADING STANDARDS

We review a district court's dismissal under Rule 12(b)(6) de novo. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

-4-

8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Two working principles underlie this standard.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  The complaint must offer sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "[s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting

*Twombly*, 550 U.S. at 555) (alteration in original).

In observing that"[t]here is disagreement as to whether this new

[*Twombly/Iqbal*] standard requires minimal change or whether it in fact requires a

significantly heightened fact-pleading standard," we concluded that

> the *Twombly/Iqbal* standard is a middle ground between heightened
> fact pleading, which is expressly rejected, and allowing complaints
> that are no more than labels and conclusions or a formulaic recitation
> of the elements of a cause of action, which the Court stated will not
> do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific
> facts are not necessary; the statement need only give the defendant
> fair notice of what the claim is and the grounds upon which it rests.

*Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal

quotations, ellipsis, citations, and alterations omitted).

Determining whether a complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679.  This contextual

approach means comparing the pleading with the elements of the cause(s) of

action.  *Khalik*, 671 F.3d at 1193.  "[W]hile Plaintiff is not required to set forth a

prima facie case for each element, she is required to set forth plausible claims"

animating the elements of her causes of action.  *Id.*  Pleadings that do not allow

for at least a "reasonable inference" of the legally relevant facts are insufficient.

*Iqbal*, 556 U.S. at 678.

We apply these principles to the allegations Ms. Burnett makes in her

complaint to determine whether the district court erred in dismissing the action.

-6-

## B. FDCPA

The FDCPA was enacted, in part, to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Ms. Burnett alleges that defendants violated the FDCPA in three ways in connection with foreclosing on her property: (1) by initiating a nonjudicial foreclosure without having a right to possess the property in violation of § 1692f(6)(A), (2) by making false representations in an attempt to collect a debt in violation of § 1692e, and (3) by failing to give her required notices in connection with an attempt to collect a debt in violation of § 1692g(a).

*1. Section 1692f(6)(A)*

The FDCPA prohibits a "debt collector" from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). The Act defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . *For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.*

-7-

*Id.* § 1692a(6) (emphasis added).[2] "By the plain language of the statute, therefore, a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to [15 U.S.C.] § 1692f(6)." *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006). By its terms, § 1692f(6)(A) applies to trustees performing nonjudicial foreclosures.

Mr. Woodall does not deny that he qualifies as a "debt collector" under § 1692f(6)(A), but he denies that Ms. Burnett's complaint properly alleges he violated that section. The district court agreed and held that Mr. Woodall did not violate § 1692f(6)(A) because MERS was authorized under the trust deed to initiate foreclosure proceedings and to appoint Mr. Woodall as successor trustee to carry out the foreclosure when Ms. Burnett defaulted on her debt.

Ms. Burnett seems to have several theories for why Mr. Woodall and the other defendants violated this provision of the FDCPA. Her primary argument is that MERS did not have authority under Utah law to act as a beneficiary, either at the origination of the loan or when it sold the loan to new lenders or as a part of a securitized trust. She relies on Utah Code Ann. § 57-1-19(1), which defines the "beneficiary" of a trust deed as "the person named or otherwise designated in a

---

[2] The FDPCA also lists six categories of entities excluded from the general definition of "debt collector." 15 U.S.C. § 1692a(6)(A)-(F). Neither party suggests any of these exceptions apply to Mr. Woodall.

trust deed as the person for whose benefit a trust deed is given, or his successor in interest." According to the allegations in Ms. Burnett's complaint, MERS cannot be a beneficiary of the note because it has no ownership right in the note. As a result of MERS's alleged lack of authority as beneficiary, she alleges, Mr. Woodall, as MERS's assignee, did not have authority to foreclose on her property. He therefore violated the FDCPA when he foreclosed without having a present right to possess the property. *See* 15 U.S.C. § 1692f(6)(A).

Ms. Burnett is correct that MERS is not a beneficiary as that term is defined in § 57-1-19(1) of the Utah statute, but MERS nonetheless had authority to appoint Mr. Woodall and foreclose on Ms. Burnett's property. By signing the trust deed, Ms. Burnett acknowledged that MERS was "nominee for Lender and Lender's successors and assigns," Aplt. App., vol. I at 40, and that it could foreclose on the loan in response to a default in making payments. The trust deed expressly granted MERS "the right to foreclose and sell the Property." *Id.* Ms. Burnett consented to these terms. The plain language of the trust deed undermines her argument that MERS lacked the authority to appoint Mr. Woodall as successor trustee for the purpose of foreclosing on her property.

Ms. Burnett also contends any rights originally accorded to MERS in the trust deed were lost by transfer of the debt from the original lender to new lenders

or through securitization.[3]  She argues MERS was legally required to obtain express authorization from any new principals prior to appointing Mr. Woodall for the purpose of initiating a nonjudicial foreclosure.

This argument is foreclosed by our decision in *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194 (10th Cir. 2011).  In *Commonwealth*, we rejected the claim that MERS lost its authority to foreclose once the debt secured by a Utah trust deed had been securitized and sold on the open market.  *Id.* at 1204-05.  Like the trust deed in this case, the trust deed in *Commonwealth* provided that "MERS (as nominee for Lender and Lender's successors and assigns) has the right[] . . . to foreclose and sell the Property."  *Id.* at 1202 (internal quotation marks omitted).  We observed that the Utah Court of Appeals had concluded this language authorizes MERS to initiate foreclosure proceedings against the collateral even after the underlying debt has been resold.  *See id.* at 1203-04 (discussing *Commonwealth Prop. Advocates v. Mortg. Elec. Registration Sys., Inc.*, 263 P.3d 397, 399, 402 (Utah Ct. App. 2011), *cert. denied*, 268 P.3d 192 (Utah 2011)).  The Utah Court of Appeals explained that Utah state law

_____

[3] As we noted in *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 119 n.2 (10th Cir. 2011), "[the] process of pooling loans and selling them to investors on the open market is known as securitization.  MERS facilitates the securitization process by allowing promissory notes to be transferred without costly recordation in the local land records."

does nothing to prevent MERS from acting as nominee for Lender and Lender's successors and assigns when it is permitted by the Deed of Trust. . . . [W]e do not interpret the statute as preventing, implying, or somehow indicating that the original parties to the Note and Deed of Trust cannot validly contract at the outset to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in the security instrument . . . .

*Commonwealth Prop. Advocates*, 263 P.3d at 403 (citing Utah Code Ann. § 37-1-35) (internal quotation marks and alterations omitted). Deferring to the state court decision, we concluded that even assuming securitization had "deprive[d] Defendants of their implicit power to foreclose as holders of the trust deeds, the trust deeds *explicitly* granted Defendants the authority to foreclose." *Commonwealth*, 680 F.3d at 1204-05.

As in *Commonwealth*, the trust deed here explicitly allowed MERS to foreclose on Ms. Burnett's property. Accordingly, Mr. Woodall, as MERS's assignee, was also so authorized. Because he thereby had a present right to possession of the property, Mr. Woodall did not violate § 1692f(6)(A) of the FDCPA by initiating nonjudicial foreclosure proceedings. *See* 15 U.S.C. § 1692f(6)(A).[4]

---

[4] Ms. Burnett makes several new allegations on appeal asserting that MERS unlawfully used "robo-signing" in its appointment of Mr. Woodall as substitute trustee. She contends the district court should have given her leave to amend her complaint to add these allegations. But Ms. Burnett failed to raise these arguments in the district court and never requested leave to amend her complaint. Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave. *Calderon v. Kansas Dep't of Soc. & Rehab Svcs.*, 181 F.3d 1180, 1185-87 (10th Cir. 1999); *Glenn v.*

(continued...)

-11-

*2. Sections 1692e and 1692g*

Outside of the limited context of § 1692f(6)(A), the FDCPA defines a "debt collector" to include "any person . . . *who regularly collects or attempts to collect . . . debts* owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (emphasis added).  Ms. Burnett alleges, with no specifics, that Mr. Woodall regularly collects debts in addition to enforcing security interests.  *See Kaltenbach*, 464 F.3d at 529 (a person who satisfies § 1692a(6)'s general definition by regularly collecting debts owed to another is a "debt collector" subject to the entire FDCPA, even when enforcing a security interest).

Ms. Burnett contends her complaint sets forth sufficient allegations to establish that Mr. Woodall violated §§ 1692e and 1692g of the FDCPA in connection with the foreclosure.  Section 1692e prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means *in connection with the collection of any debt*."  15 U.S.C. § 1692e (emphasis added).  Section 1692g requires that "[w]ithin five days after the initial communication with a consumer *in connection with the collection of any debt*, a *debt collector* shall . . . send the consumer a written notice containing" certain information about the debt,

---

[4](...continued)
*First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989).  We decline to consider these new allegations because they were not raised below.  *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

including the amount of the debt and to whom the debt is owed.  15 U.S.C. § 1692g(a) (emphasis added).  Thus, to adequately state a claim, Ms. Burnett's complaint must allege sufficient facts to plausibly suggest that Mr. Woodall is a debt collector whose efforts to collect a debt from Ms. Burnett, a consumer, violated these provisions of the FDCPA.  The parties disagree about whether Ms. Burnett's complaint adequately alleges that Mr. Woodall is a "debt collector" who acted "in connection with the collection of a debt" for purposes of the FDCPA.

We have not yet decided whether a nonjudicial foreclosure may itself qualify as debt collection under these provisions of the FDCPA.  Cases from other circuits have analyzed this issue in varying fashions, as we described in *Maynard v. Cannon*, 401 F. App'x 389, 395-96 (10th Cir. 2010) (unpublished).  *See also* Richard D. Gage, A REMEDY FORECLOSED? MORTGAGE FORECLOSURE AND THE FAIR DEBT COLLECTION PRACTICES ACT, 81 Fordham L. Rev. 283 (2012).  Although *Maynard* is unpublished and therefore not precedential, we find its discussion of this issue thorough and persuasive and we adopt it here.

As we explained in *Maynard*,

> Under Utah law, a non-judicial foreclosure is commenced by a trustee filing a notice of default, and after a three-month no-action period, the trustee can sell the trust property at public auction.  Utah Code Ann. §§ 57-1-23,-24,-27.  A non-judicial foreclosure differs from a judicial foreclosure in that the sale does not preserve to the trustee the right to collect any deficiency in the loan amount personally against the mortgagor. *See* 59A C.J.S. *Mortgages* § 874.  Thus, a non-judicial foreclosure allows the trustee to obtain proceeds from the sale of the foreclosed property, and no more.  Under Utah

-13-

> law, for Household to recover any deficiency against Maynard personally, it would be required to commence a separate contract action as permitted under the loan documents. *See* Utah Code Ann. § 57-1-32 ("[W]ithin three months after any sale of property under a trust deed . . . an action may be commenced to recover the balance due on the obligation for which the trust deed was given as security.").

401 F. App'x at 391-92.  Thus, in Utah, "[w]hen a debt has yet to be reduced to a personal judgment against a mortgagor, a non-judicial foreclosure does not result in a mortgagor's obligation to *pay money* – it merely results in the sale of property subject to a deed of trust. *Id.* at 394.

We pointed out in *Maynard*, however, that the initiation of foreclosure proceedings may be intended to pressure the debtor to pay her debt.  As in *Maynard*, we need not decide whether filing a nonjudicial foreclosure constitutes collection of debt within the meaning of the FDCPA.  Even if a debt collector acts "in connection with the collection of a debt" when pursuing a nonjudicial foreclosure, Ms. Burnett failed to allege sufficient facts to plausibly state a claim that Mr. Woodall violated the FDCPA.

### a. *§ 1692e*

Ms. Burnett's allegations with regard to § 1692e, which prohibits false representations made by a debt collector in connection with the collection of a debt, fall short of *Twombly/Iqbal* pleading standards.  All she alleges is that "the defendants made numerous false representations as to the nature and the character of the debt . . . ."  Aplt. App., vol. I at 8.  The false representations allegedly

-14-

made by "defendants" consisted of, *inter alia*:

> . . .

> > b. Making demands for payment – via "payoffs," "reinstatement demands," emails, faxes, correspondence, telephone calls *and/or* meetings, and the like – which asserted that attorneys' fees are due and owing when (i) they have not been liquidated and declared by a Court to be due and owing, and (ii) they include amounts not authorized by the Note or by statute.
> > c. Recording and circulating notices of default which claim that amounts are due and owing to MERS . . . .
> > d. Making demands for payment *or* giving accountings which do not credit Burnett for all payments made and the like.

*Id.* at 8-9 (Complaint, ¶ 28). These allegations are too conclusory, vague and confusing to give each "defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Ms. Burnett's complaint is not just deficient because it attributes actions to a large group of collective "defendants," which includes fifty unknown Doe defendants in addition to MERS and Mr. Woodall, but also because it is a litany of diverse and vague alleged acts ("emails, faxes, correspondence, and/or meetings, and the like") with zero details or concrete examples. *Compare Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216-18 (11th Cir. 2012) (allegations included specific letter from defendant law firm demanding full and immediate payment of amount claimed due). From such broad allegations against a large and mostly anonymous group of people, this court cannot "draw the reasonable inference that the defendant [Mr. Woodall] is liable for the misconduct alleged," because we

-15-

cannot tell *which* defendant is alleged to have done what, nor can we tell *what* the misconduct was. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

We do know from the complaint that Mr. Woodall filed the Notice of Default, which set forth the principal amount of the note, stated that a default had been made in paying the monthly payments, and set forth the total amount due, including foreclosure costs, as $10,917.54. Aplt. App., vol. I at 56. But Ms. Burnett consented to the filing of such a notice in the trust deed she signed. As we held in *Maynard*, 401 F. App'x at 396, "[t]he filing of the notice of default does not in and of itself violate the FDCPA . . . . The notice was simply the first step in a foreclosure on her house, not a demand for payment."

It is not unfair to require Ms. Burnett to provide details about the other alleged "demands for payment." We have previously noted that one of the chief criticisms of *Twombly*'s plausibility standard "is that plaintiffs will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence." *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). Such a concern is absent here, however, where Ms. Burnett apparently was a recipient of the allegedly false representations made through "'payoffs,' 'reinstatement demands,' emails, faxes, correspondence, telephone calls and/or meetings, and the like." Aplt. App., vol. I at 8-9. Where the plaintiff is the one who ostensibly received these communications and is well-positioned to know, for example, the dates they were

received and who sent them, the failure to include *any* such detail is fatal to the complaint. *Khalik*, 671 F.3d 1188, 1194 (10th Cir. 2012) (holding complaint alleging retaliatory firing deficient for lack of facts when plaintiff should have known at least to whom she complained, when, and how; who criticized her work, where, and when; and plaintiff failed to plead any such facts). As in *Khalik*, Ms. Burnett could have provided additional factual support for her allegations with little effort because the details were known to her. Notably, she did not even mention these allegations in her response to Mr. Woodall's motion to dismiss.

### b. Section 1692g

In support of her claim that § 1692g was violated, Ms. Burnett alleges that although the section "requires that a debt collector provide certain notices of debt collection within five (5) days of the first communication with the debtor[,] [n]either MERS nor Woodall gave any of the required notices." Aplt. App., vol. I at 8. No other facts are alleged in relation to this claim. Legal conclusions can provide the framework of a complaint, [but] they must be supported with factual allegations." *Iqbal*, 556 U.S. at 679. These bare allegations provide merely a formulaic recitation of the elements of the claim. "As such, the allegations are conclusory and not entitled to be assumed true." *Id.* at 681.

This allegation is especially inscrutable because of the broad assertions in paragraph 28 of the Complaint that the "defendants," which includes MERS and Woodall, were sending many communications to the plaintiff, in the form of

emails, faxes, and "the like." Section 1692g liability requires an "initial communication . . . in connection with the collection of any debt" to trigger the notice obligation – but when does Ms. Burnett assert that this "initial communication" took place? Having attributed a slew of communications to a slew of defendants makes it impossible to tell. And for the reasons discussed above and in *Khalik*, given the fact that Ms. Burnett herself is the one who allegedly received these communications, it is not improper to require her to plead more detail so as to understand when she alleges § 1692g was triggered and by whom violated. Again, Ms. Burnett has not stated sufficient factual allegations here to "nudge [her] claims . . . across the line from conceivable to plausible." *Twombly* at 570.

A court must be able to "infer more than the mere possibility of misconduct." *Iqbal*, 556, U.S. at 679. Because Ms. Burnett's complaint fails to adequately allege plausible violations of the FDCPA by Mr. Woodall, the district court properly dismissed these claims.

### B. Utah Consumer Sales Practices Act

Ms. Burnett's complaint also alleges all of the defendants engaged in unconscionable conduct and committed deceptive acts and practices by making false representations in connection with the nonjudicial foreclosure of her property in violation of the Utah Consumer Sales Practices Act. *See* Utah Code Ann. §§ 13-11-4, -5.

-18-

"The UCSPA generally prohibits deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction." *Carlie v. Morgan*, 922 P.2d 1, 5-6 (Utah 1996) (internal quotation marks omitted); *see also* Utah Code Ann. § 13-11-2(2). The statute broadly defines a "consumer transaction" as:

> a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance) to, or apparently to, a person for . . . primarily personal, family, or household purposes . . . .

Utah Code Ann. § 13-11-3(2)(a). A supplier who violates the UCSPA can be liable to the consumer for damages and court costs. *Id.* § 13-11-19(2).

The district court held that Ms. Burnett's UCSPA claim was preempted by the combined effect of Utah's trust deed statute, which provides a comprehensive and detailed regulatory scheme governing trustee conduct, including civil remedies and criminal consequences for violations, and the resulting ability of trustors/debtors to have a foreclosure sale set aside where a trustee has acted with fraud, irregularity or want of notice. On appeal, Ms. Burnett maintains the district court erred when it dismissed her UCSPA claim because Utah's trust deed statute does not provide a remedy for unconscionable or deceptive acts by a trustee. We "review *de novo* a district court's determination of state law." *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991); *see also Time Warner Entm't Co. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1044 (10th Cir.

-19-

2004) ("State law claims before a federal court on supplemental jurisdiction are governed by state law, and we review a federal district court's determination of state law de novo." (footnote omitted)).

The Utah Court of Appeals has held that "[t]he detailed procedural requirements for a trustee's sale of real property under Utah Code Ann. §§ 57-1-23 to -34 . . . are intended to protect the debtor/trustor." *Jones v. Johnson*, 761 P.2d 37, 41 n.2 (Utah Ct. App. 1988). Under the Utah trust deed statute, a trustee must, if requested, provide the trustor with a statement that details the amount required to pay off the loan or reinstate the obligation secured by the trust deed, including any attorney fees the trustor is required to pay to do so. Utah Code Ann. § 57-1-31.5. If a trustor is paying off the loan or reinstating the obligation, a trustor cannot require her to pay any costs that exceed the trustee's actual costs. *Id.* § 57-1-21.5(5). A violator of this provision is guilty of a class B misdemeanor and will be liable to the trustor for damages. *Id.* § 57-1-21.5(6)(a)-(b). Utah law also requires a notice of default to include a description of the nature of the breach of obligation that occurred. *Id.* § 57-1-24(1). A trustee engaging in a non-judicial foreclosure "has a duty to the trustor not to defraud, or conspire or scheme to defraud, the trustor." *Id.* § 57-1-25(5). Moreover, as the district court observed, a debtor/trustor may seek to have a trustee sale conducted under the statute set aside for "irregularity, want of notice, or fraud." *Concepts, Inc. v. First Sec. Realty Servs. Inc.*, 743 P.2d 1158, 1159 (Utah 1987).

The Utah Supreme Court has held the UCSPA may be preempted by a more specific state law that addresses the precise aspect of the relationship at issue. *Carlie*, 922 P.2d at 6, but it has not decided whether the UCSPA is preempted by the Utah trust deed provisions. We need not decide that question in this case. Ms. Burnett's UCSPA claim fails for the same reason her FDCPA claims failed: she provides insufficient factual allegations to plausibly state her claim.

Ms. Burnett alleges all of the defendants are "suppliers" within the meaning of the UCSPA and "[t]he false representations by defendants referred to herein, and other actions complained of herein, constitute deceptive acts or practices, and/or unconscionable conduct in connection with a consumer transaction . . . ." Aplt. App., vol. I at 10. These "false representations" apparently refer to the same allegations we found insufficient to allege a violation of 15 U.S.C. § 1692e. As we have already explained, the complaint failed to provide any details regarding these communications. Without any information regarding who made the allegedly false representations, what communications were false, or when these communications occurred, the allegations are inadequate to provide fair notice to each defendant. *See supra* Section II.A.2. Accordingly, this claim was properly dismissed.

## C. Breach of Duty

Ms. Burnett's complaint alleges that a person appointed as a trustee under a trust deed owes a duty of good faith and reasonableness to the trustor.[5] She claims Mr. Woodall violated this duty when he refused to postpone the sale of her property until he resolved her contentions that he lacked authority to foreclose on the property, that MERS had no standing to appoint him as substitute trustee, and that MERS was unable to produce the original note prior to foreclosure. The district court held Ms. Burnett failed to state a claim for breach of duty because the trust deed permitted MERS to foreclose on Ms. Burnett's property. We agree.

As we have already explained, MERS had authority under Utah law to act as a beneficiary and the trust deed permitted MERS to undertake a nonjudicial foreclosure when Ms. Burnett defaulted on her obligations. Mr. Woodall was under no duty to investigate MERS's authority beyond the language of the trust deed. In addition, while Ms. Burnett's complaint alleges Mr. Woodall should have postponed the sale of her property because MERS was unable to produce the original note, she makes no argument on appeal regarding why it was necessary for MERS to possess the note in order to appoint Mr. Woodall as substitute trustee, nor has she provided authorities relevant to this issue. "We will not review an issue in the absence of reasoned arguments advanced by the appellant

---

[5] Ms. Burnett does not contend Mr. Woodall owed her a fiduciary duty.

-22-

as to the grounds for its appeal." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007); *see also Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.").

Accordingly, we affirm the district court's dismissal of this claim.

### D. Remaining Claims

We may quickly dispense with Ms. Burnett's remaining arguments. Ms. Burnett appeals the district court's dismissal of her slander of title claim. A slander of title claim has four elements in Utah. A plaintiff must prove: "(1) there was a publication of a slanderous statement disparaging claimant's title, (2) the statement was false, (3) the statement was made with malice, and (4) the statement caused actual or special damages." *First Sec. Bank of Utah, N.A. v. Banberry Crossing*, 780 P.2d 1253, 1256-57 (Utah 1989). "A slanderous statement is one that is derogatory or injurious to the legal validity of an owner's title or to his or her right to sell or hypothecate the property . . . ." *Id.* at 1257 (alteration in original) (internal quotation marks omitted).

Ms. Burnett claims that Mr. Woodall's filings of the notice of default and notice of trustee's sale were slanderous because "MERS had no right or standing" to foreclose on her property. Aplt. App., vol. I at 14. As we have held, Ms. Burnett is wrong. Because MERS had authority under the trust deed to foreclose

-23-

and Mr. Woodall was properly appointed as substitute trustee to carry out the foreclosure, the district court correctly dismissed this claim.

Similarly, the district court properly dismissed Ms. Burnett's request for a declaratory judgment. She seeks declarations that MERS acted without authority, that Mr. Woodall could not be a substitute trustee, and that MERS must produce the note. For all the reasons explained above, Ms. Woodall's challenges to MERS and Mr. Woodall's authority to foreclose are without merit. As a result, Ms. Burnett is not entitled to declaratory relief.

## III.

For the reasons stated above, we AFFIRM.