WINFREE, Justice,
with whom STOWERS, Justice, joins, dissenting.
The primary issue in this appeal is Whether a business that regularly-but only—acts as a trustee conducting non-judicial deed of trust-foreclosures falls for all purposes under the Fair Debt Collection Practices Act's (FDCPA) "debt collector" definition.[1] Because the court collapses the FDCPA's disparate usage of the terms. "security interest" and "debt";[2] because one: who merely enforces a security interest should not be subject to the entire FDCPA but only to its illegal dispossession subsection;[3] and because 'the Ambridges brought suit under a FDCPA section requiring an' "initial commmication ... in connection with the collection of any debt"[4] before liability attaches, but a statutorily required notice of default under Alaska law is not such a communication, I dissent.
I. A Deed Of Trust Is A Security Instrument, Not A Debt.
A deed of trust is interdependent yet dis-tinet from the debt it secures,[5]
The mortgage was created by the early English court as a transfer of title from the mortgagor to the mortgagee, generally as security for a loan by the mortgagee to the mortgagor. Onee the mortgagor repaid the loan proceeds, title to the property would return to him. If, however, the mortgagor failed to pay the mortgage by the due date, called the law day, he would *228 forfeit all interest in the property.[6]
Because of injustices surrounding law day forfeitures, a common law right of 'equitable redemption developed allowing a mortgagor to repay the loan after law day. and thus regain title to property.[7] But the right of equitable redemption made title uncertain, and therefore the remedy of strict foreclosure arose: "If the mortgagor failed to redeem within [a certain time], the redemption right was forever barred and both legal and equitable title to the real estate vested in the mortgagee."[8]
From this emerged the concept that a mortgage-or as is commonly used in Alaska, 2a deed of trust[9] not be treated as a transfer of title but rather "as merely a security interest in the property" that " 'confers no right to possession of that real estate on the mortgagee'. ... 'until there has been a valid foreclogure.'"[10] In short, non-judicial foreglosure—the process through which a security interest in property is enforced "[11] - does not in and of itself collect a debt, but rather " 'calls for the vesting and divesting of title to real property'" according to the parties' prior agreement.[12]
Against this historical backdrop the FDCPA defines the term "debt collector" differently depending on whether a debt or a security interest is at issue. Relevant here, a "debt collector" is:
[A]ay person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. .. . For the purpose of section 1692f(6) of this title,[13] such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforce- . ment of security interests.[14]
The FDCPA defines "debt" in: terms of money and does not mention security interests; a "debt" is "any obligation ... of a consumer to pay money."[15] The court states that this definition "plainly encompasses a home mortgage." But a security instrument is itself not an obligation to pay money; rather the obligation to pay money is created by the underlying loan agreement. A mortgage secures payment of a mortgagor's separate debt-without a separate debt or other obligation to secure, a mortgage has little effect-and a non-judicial foreclosure operates only to shift title from the mortgagor to the foreclosure sale purchaser.[16] And noth *229 ing in the FDCPA's definition suggests that a mortgage is somehow converted into a debt through the nonjudicial foreclosure process.
In construing the term "debt collector," courts have recognized that "if the enforcement of a security interest was synonymous with debt collection," then the definitional sentence referencing security interests "would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts.[17] "" This result is avoided if security interest enforcers are not subject to liability under the entire FDCPA but instead held Hable only for violations of the illegal dispossession subsection, § 1692f(6). "
II. Congress Did Not Intend The FDCPA To Impose Liability On Entities Only Pursuing Non-Judicial Deed Of Trust Foreclosures.
Congress passed the FDCPA in 1977 in response to "the use of abusive, deceptive, and unfair debt collection practices"[18] such as: "threats of violence; obscene language; the publishing of 'shame harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; . and. misusing postdated checks."[19] Cliven - the FDCPA's legislative history, it is more than questionable whether "Iplrosecuting a state foreclosure action is '. the type of abusive collectifon] practice[ ] that the FDCPA is afmed at eliminating."[20]
Indeed, "the purposes of the FDCPA would [not] be furthered by applying [it] to state foreclosure proceedings considering the panoply of protections and safeguards available to parties of a foreclosure action under [state] law."[21] .In Alaska a trustor may invoke the personal defenses of fraud and misrepresentation to invalidate a foreclosure sale;[22] a foreclosure sale contract may be modified baséd on mutual mistake;[23] 'procedural or substantive inequities surrounding the foreclosure process may invalidate the sale;[24] a trustee may not act inimically to a trustor's interests;[25] a trustor by statute can "bring an action ... to enjoin a foreclo-
*230 sure";[26] and a trustor can twice prevent a foreclosure sale by paying the arrearages before the trustee "may elect to refuse payment and continue the sale."[27]
As one district court reasoned: [The] statutes require the trustee to record a notice of default as the first step in a non-judicial foreclosure proceeding. The notice must contain a statement that a breach of an obligation has occurred and set forth the nature of the breach. The intent behind the FDCPA was to prohibit abusive collections practices, not to outlaw foreclosures when there is an express security agreement and breach of an obligation.[28]
The evils the FDCPA was meant to remedy are not implicated during a non-judicial deed of trust foreclosure sale that fully complies with Alaska law. On the other hand, overlaying the FDCPA on a state's statutory non-judicial deed of trust foreclosure system by making deed of trust trusteee-such as title companies-"debt collectors" will wreak havoc, For example, the FDCPA bars a debt collector from contacting a consumer with respect to a debt if the consumer has asked the debt collector to stop[29] and bars a debt collector from continuing collection of a disputed debt until the debt is verified.[30] This will grind non-judicial deed of trust foreclosures to a halt, lead to missed statutory deadlines, missed statutory notices to debtors and third-parties, and necessitate restarts of the process.[31]
III. The Assertion That Non-Judicial Deed Of Trust Foreclosures Are Debt Collection Under The FDCPA Is Unpersuasive.
The court's reliance on Glazer v. Chase Home Finance LLC[32] is misplaced. The court notes that Glazer held that all real estate foreclosure activities constitute debt collection, in part because the FDCPA requires all debt collectors to "bring[] any legal action ... to enforce an interest in real property ... in a judicial district ... in which such real property is located."[33] But in Alaska-and in other states with similar laws-a judicial foreclosure proceeding is required for a mortgagee to seek a deficiency judgment.[34] The FDCPA clearly regulates a debt collector seeking to collect money under a judicial foreclosure deficiency judgment,[35] *231 but a non-judicial deed of trust foreclosure in Alaska-and in other states with similar laws-cannot result in a deficiency judgment.[36]
And in Alaska and many other jurisdictions permitting non-judicial deed of trust foreclosures, no legal action of any kind is required; rather, the trustee must only notify interested parties, including the trustor, of the default.[37] Therefore a deed of trust trustee, like Alaska Trustee, conducting only non-judicial deed of trust foreclosures hot permitting deficiency judgments, cannot be brought within the FDCPA's general debt collector definition simply- because one provision restricts where judicial foreclosure actions permitting deficiency judgments may be brought,. Only the illegal dispossession subsection explicitly regulating "nonjudicial action[38] should apply to Alaska Trustee.
After conflating the FDCPA's distinction between a debt and a security interest, the Glazer court had to explain to whom the illegal dispossession subsection[39] was intended to apply, and it concluded that because "repossession agencies and their agents" only enforce security interests, this subsection was meant to apply exclusively to them.[40] But this logic hinges on the faulty premise that non-judicially enforcing a security interest in personal property is medningfully different from non-judicially enforcing a seeurity interest in real property. It is not. As with non-judicial deed of trust foreclosures, Uniform Commercial Code repossessions under Article Nine allow secured parties[41] to offset their losses on underlying debt by retaining or selling pledged collateral.[42] Without otherwise collecting or even attempting to collect a single cent from the debtor, both lenders holding a deed of trust and lenders holding a security interest in personal property may, upon default, divest the debtor of title to the collateral property simply by virtue of their security interests.[43] Enforcing a security interest without otherwise collecting on the underlying debt does *232 not transform the enforcer of the security interest-whether in personal property or real property-into a debt collector subject to the prohibitions of the entire FDCPA; rather, the security interest enforcer incurs liability only by violating the illegal dispossession subsection.
The Glazer court posited that the illegal dispossession subsection was intended to apply to personal property repossession agencies, and the court adopts Glager's logic, agreeing that such entities "may well have no regular practice of communicating with debtors" of the type the FDCPA prohibits.[44] But in two cases the Glazer court cited to support this proposition, the debtor was contacted, sometimes repeatedly.[45] And the illegal dispossession subsection prohibits not only "Itlaking" but also "threateming to take any nonjudicial action,"[46] which presumably entails some form of communication. Assumed levels: of communication between debtors and security interest enforcers are therefore not a reliable justification for applying the illegal dispossession subsection to personal property repossession agencies but not to nonjudicial deed of trust foreclosure companies like Alaska Trustee. ©
'In short, Glazer's logic does not support treating every security interest enforcer as a debt collector. If Congress meant for "any business the principal purpose of which is the collection of any debts" to mean exactly the same thing as "any business the principal purpose of which is the enforcement of security interests,"[47] then it would not have used these two different phrases in defining "debt collector" while also creating the ilegal dispossession subsection only for security interest enforeers.[48] The' court's reliance on Glazer is therefore misplaced.
Finally, the court asserts that recent case law from the Eleventh Circuit Court of Appeals supports imposing FDCPA liability on Alaska Trustee. . But in Reese: v. Ellis, Painter, Ratterree & Adams, LLP the Eleventh Circuit imposed FDCPA liability on a law firm initiating a non-judicial foreclosure gale when, although Georgia law required that a notice of foreclosure be sent to the mortgagor but did "not require a demand for payment of the debtf,] ... the law firm included one anyway.[49] That is not the case here: The Reese court explicitly refused to decide the question that this case presents: "whether a party enforcing a security interest without demanding payment on the underlying debt is attempting to collect a debt" under the FDCPA,[50] and Eleventh Circuit district courts continue to answer this question in the negative.[51]
*233 IV.; The Notice Of Default Required By Alaska Statute Is Not A "Communication" Under The FDCPA.
The only FDCPA provision under which the Ambridges brought suit; 15 U.S.C. § 1692g(a), requires in relevant part that a debt collector's initial communication with the debtor state "the amount of the debt" or that the debt collector inform the debtor of this amount "(within five days after the int-tial communication." Under the Alaska law relevant here, trustees must send notices of default to trustors before holding non-Jjudicial foreclosure sales, and the notices must state: "that a breach of the obligation for which the deed of trust is security has occurred"; "the nature of the breach"; "the sum owing on the obligation"; and that the trustee has elected "to sell the property to satisfy the obligation."[52] In August 2009 Alaska Trustee sent the Ambridges such a notice, and a few weeks later Alaska Trustee sent them an amended notice containing the same information. Aside from these two statutorily required notices of default that did not attempt to collect money, Alaska Trustee did not further communicate with the Ambridges about the foreclosure, and it never sent them a reinstatement letter requesting money to bring their loan current and prevent foreclosure. to No s
On these facts, had Alaska Trustee instead initiated a judicial foreclosure and served the Ambridges with a complaint, its non-liability under the FDCPA would not be debatable: "A commauniceation in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692g(a) ].[53] It is no different in the non-judicial foreclosure process-according to the Federal Trade Commission (FTC) the term communication "does not include a notice that is required by law as a prerequisite to enforcing a contractual obligation between creditor and debtor, by judicial or nonjudicial legal process."[54] It is an unfair debt collection practice to represent or imply "that nonpayment of any debt will result in the . sale of any property ... of any person unless such action is lawful and the debt collector .. intends to take such action,"[55] but in Alaska non-judicial deed of trust foreclosure sales are lawful.[56] 'It also is an unfair debt *234 collection practice to advertise "for sale any debt to coeree payment of the debt,"[57] but the FTC commentary states that this provision is not violated "by providing public notices that are required by law as a prerequisite to enforcement of a security interest in connection with a debt."[58]
Although the FDCPA was intended "to eliminate abusive debt collection practices," it also was intended "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.[59] Alaska Trustee complied with Alaska non-judicial foreclosure law,[60] but the court nonetheless wrongfully penalizes Alaska Trustee by affirming the superior court's FDCPA damages award to the Ambridges.
V. Conclusion
Other courts repeatedly have refused to conflate the FDCPA's distinction between security interest enforeers-to whom only the illegal dispossession subsection applies[61]- and debt collectors, to whom the prohibitions of the entire FDCPA apply.[62] In respecting this distinction, these courts have not hesitated to subject security interest enforcers to liability under the entire FDCPA if they attempt to collect money in addition to foreclosing on security interests.[63] In my view this is the correct FDCPA analysis, and applying it here can lead only to the conclusion that under the facts of this case, Alaska Trustee is not a debt collector subject to the entire FDCPA.[64] I therefore dissent.

. 15 U.S. C §§ 1692-1692p (2012).

. See zd § 1692a(6) (deﬁmng the term "debt collector").

. See id. § 1692f(6).

. Id. § 1692g(a).

. See Espeland v. OneWest Bank, FSB, 323 P.3d 2, 9-10 (Alaska 2014) (stating that trustors "signed a Promissory Note creating the obligation to repay their loan and a Deed of Trust giving the lender, through the trustee, the right to sell the property if they failed to repay the loan"); accord Jackson v. Mortg. Elec. Registration Sys., Inc., 770 NW.2d 487, 493-94 (Minu. 2009) ('Historically, promissory notes and security instruments have been treated as two distinct documents that are legally intertwined. A real property mortgage has 'two things, the personal » obligation and the interest in the realty securing that obligation.'" (citation omitted) (quoting 4 Groree E. OssornE, American Law or Property § 16.107 (1952))), Grant S. Nerson Er at, Rear Esrare TRANSFER Finance, anp Deveropment 100 (8th ** ed. 2009) ("A mortgage involves a transfer by a debtor-mortgagor to a creditor-mortgagee of a real estate interest, to be held as security for the performance of an obligation, normally the pay- , ment of a debt evidenced by a promissory note.").

. Young v. Embley, 143 P.3d 936, 940 (Alaska 2006) (footnote omitted) (citing 1 Grant S; Nelson & Dame A. Wurman, Rear Estate FINANCE Law ~§ 1.2, at 6-7 (4th ed.2002)).

. See zd

. Resrarement (Trmirp) or Pror.; Morras. § 3. 1 emt. a (1997). o

. For the most part Alaska law does not differentiate between deeds of trust and mortgages because both " 'accomplish(] the same purpose[] {of] creating a security interest in land.' " Young, 143 P.3d at 941-42 (quoting Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks, 478 ;P.2d 829, 831 (Alaska 1970)). ,

. Id. at 940 (quoting Restatement (Tammi) or Prop.; Mortes. § 4.1(a) (1997); Nelson & Wurman, supra note 6, § 1.5, at 10).

. See generally AS 34.20.070. -

. See Derisme v. Hunt Leibert Jacobson P.C., 880 F.Supp.2d 311, 321 (D.Conn.2012) (quoting City of New Haven v. God's Corner Church, Inc., 108 Conn.App. 134, 948 A.2d 1035, 1040 (2008)); see also AS 34.20.070(a) (permitting non-judicial foreclosure sale if deed of trust "provides that in the case of default ... trustee may sell the property for condition broken"); AS 34.20.090(a) (stating non-judicial foreclosure sale "transfers all title and interest that the party executing the ~ deed of trust had in the property").

. Under 15 U.S.C. § 1692f(6) a security interest enforcer incurs liability only by:
Taking or threatening to take any non-judicial action to effect dispossession or disablement of property if ... there is no present right to possession of the property claimed as collateral through an enforceable security interest; there is no present intention to take possession of the property; or ... the property is exempt by law from such dispossession or disablement.

. Id. § 1692a(6) (emphases added).

. Seeid. § 1692a(5) (emphasis added).

. See supra note 12 and accompanying text; see also AS 34,20.100 (prohibiting an "action[,] ... *229 proceeding[,] ... [or] judgment ... on the obligation secured by the deed of trust" after a nonjudicial foreclosure sale}.

. Eg., Gray v. Four Oak Court Ass'n, 580 F.Supp.2d 883,888 (D.Minn.2008); Natividad v. Wells Fargo Bank, NA., No. 3:12-cv-03646 JSC, 2013 WL 2299601, at *6 (N.D.Cal.. May 24, 2013); see also Warren v. Countrywide Home Loans, Inc., 342 Fed.Appx. 458, 460-61 (11th Cir.2009) (per curiam) ("[TJhe statute specifically says that a person-in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6), which reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act."); Dunavant v. Sirote & Permutt, P.C., 603 Fed. Appx. 737, 739-40 & n.2 (11th Cir.2015) (per curiam) (Clarifying that Warren remains good law).

. 15 U.S.C. § 1692(a); Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 874 (1977). .

. S. Rap, No. 95-382, at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1698; see also 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."); 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.").

. Derisme v. Hunt Leibert Jacobson P.C., 880 F.Supp.2d 311, 328 (D.Conn.2012).

. Id. at 327.

. See Bauman v. Day, 892 P.2d 817, 823-24 (Alaska 1995) ("We see no reason why the per- . sonal defenses of an owner cannot, result in invalidating a non-judicial sale just as they can result in invalidating the obhgatxon on which the sale was based.").

. See Fireman's Fund Mortg,. Corp. v. Allstate Ins. Co., 838 P.2d 790, 797 (Alaska 1992).

. See Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc., 116 P.3d 592, 596 (Alaska2005) (noting that procedurally "unfair and unreasonable" non-judicial foreclosure sales may be set aside); Baskurt v. Beal;.101 P.3d 1041, 1044, 1046 (Alaska 2004). h

. See Baskurt, 101 P.3d at 1046 (noting that the trustee has "the duty to take reasonable and appropriate steps to avoid sacrifice of the debt- or's property and interest").

. AS 34.20.070(1)(1).

. AS 34.20.070(b).

. Maynard v. Cannon, 650 F.Supp.2d 1138, 1143-44 (D.Utah 2008) (citations omitted), aff'd, 401 Fed.Appx. 389 (10th Cir.2010); see also Burnett v. Mortg,. Elec. Registration Sys., Inc., 706 F.3d 1231, 1239 (10th Cir.2013) (" [When a debt has yet to be reduced to a personal judgment against a mortgagor, a non-judicial forecio-sure does not result in a mortgagor's obligation to pay money-it merely results in the sale of property subject to a deed of trust.'" {(emphasis in original) (quoting Maynard, 401 Fed.Appx. at 394)).

. 15 U.S.C. § 1692c(c).

. Id. § 16928(b).

. Cf. AS 34.20.070-.080 (providing state procedures for notification of default and conducting sale for non-judicial deed of trust foreclosures).

. 704 F.3d 453 (6th Cir.2013).

. 15 U.S.C. § 1692i(a)(1); see Glazer, 704 F.3d at 461-62.

. See AS 09.45.170; AS 09.45.180; AS 34,20.100; Kuretich v. Alaska Tr., LLC, 287 P.3d 87, 91 (Alaska 2012) (explaining that after judicial foreclosure sale, "the lender can obtain a deficiency judgment against the borrower for amounts still owed"); see also, eg., Wash. Fed., v. Harvey, 182 Wash.2d 335, 340 P.3d 846, 847 n. 1 (2015) (explaining that in non-judicial foreclosures borrowers surrender their rights to redemption "in exchange for protection from deficiency judgments" available in judicial foreclosures); Garretson v. Post, 156 Cal.App 4th 1508, 68 Cal.Rptr.3d 230, 235 (2007) (explaining deficiency judgments are available in judicial foreclosures but not in non-judicial foreclosures).
The court's reliance on Dworkin v. First National Bank of Fairbanks, 444 P.2d 777 (Alaska 1968), is equally misplaced. That case involved a judicial action to enforce an alleged equitable mortgage when no legal mortgage existed and , the specific question whether, for a judicial action, a security interest could survive beyond the statute of limitations for the underlying debt. I4. at 780-82.

. See Doughty v. Holder, Nos. 2:13-cv-00295-LRS to 00297-LRS,2014 WL 220832, at *5 (E.D.Wash. Jan. 21, 2014) ("[A] deficiency judgment ... is not for the purpose of enforcing the *231 security interest, but for seeking payment of funds to make up a shortfall between the proceeds obtained from the foreclosure sale and the amount of the foreclosure judgment. It is an action to collect a debt.").

. See AS 34.20.100 (prohibiting a deficiency "action[,] ... proceeding[,] ... [or] judgment ... on the obligation secured by the deed of trust" after a non-judicial foreclosure sale); see also, eg., Can Cw. Proc, Copr § 580d (West 2015); Wase. Rev. Copm Ann. § 61.24.100 (West 2015); see also 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation ... to pay money").

. See AS 34.20.070; 2 Baxter Dunaway, Tur Law or Disrersssp Rear Estate § 17.4 (2015) ("State [non-judicial foreclosure] statutes specify notice requirements, such as recording, posting on the property, mailing of notice to the borrower and other specified parties, and advertisement in newspapers."); 1 id. app. 13A (listing 29 states where non-judicial foreclosure with varying notice requirements is "normal" foreclosure method); Rear Estate Transrer, FinaNcE, aNp DeveLror. ment, supra note 5, at 641-43 (quoting Grant S. Nzrson er at., Rear Estate Finance Law 633-36 (5th ed.2007)) (explaining that roughly 60% of jurisdictions allow power of sale or non-judicial foreclosures "[alfter varying types and degrees of notice").

. 15 U.S.C. § 1692f(6).

. Id.

. 704 F.3d 453, 463-64 (6th Cir.2013).

, See U.C.C. § 9-102(a)(73) (2010); accord AS 45.29.102(a)(91)(A) (defining "secured party" in part as "a person in whose favor a security interest is created or provided for under a security agreement"). ' .

. See U.C.C. §§ 9-609, 9-610; accord AS 45.29.609(a)(1) ("After default, a secured party ... may take possession of the collateral...."); AS 45,29.610(a) ("After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral.....").

. See AS 34.20.080(b) (permitting "beneficiary"-the entity with "the ultimate right to be repaid on the loan," Espeland v. OneWest Bank, FSB, 323 P.3d 2, 5 n. 4 (Alaska 2014)-to bid at a non-judicial foreclosure sale); U.C.C. § 9-610(c); see also AS 45.29.610(c) (permitting secured party to bid on collateral at post-default sale); UCC. §9-620(a)-(c) & emt. 3; UCC. § 9-609(b)(2); AS 45.29.620(a)-(c) (permitting secured party to accept collateral in full satisfaction of debt upon notice to other parties with interest in collateral and if, debtor consents, either explicitly or by failing to timely respond to a proposal to accept collateral, but requiring that consumer goods not be "in the possession of the debtor when the debtor consents to the acceptance"); AS 45.29.609(b)(2) (permitting secured party to non-judicially repossess collateral upon default "if it proceeds without breach of the peace").

. See also 704 F.3d at 463-64.

. In Jordan v. Kent Recovery Services, Inc. the repossession agent visited the debtor's home and communicated with her no less than five times in an attempt to locate the car. 731 F.Supp. 652, 654-55 (D.Del.1990), cited by Glazer, 704 F.3d at 464. And in James v. Ford Motor Credit Co. "Ford Credit notified the Jameses of their default and told them that they planned to repossess the Escort. Ms. James told Ford Credit that she did not want her car repossessed and that Ford Credit could not take it." 47 F.3d 961, 962 (8th Cir.1995), cited by Glazer, 704 F.3d at 464.

. 15 U.S.C. § 1692f(6) (emphasis added).

. Id. § 1692a(6) (emphases added).

. See id. (stating that "[flor the purpose of" the illegal dispossession subsection, the term debt «collector "also includes" security interest enfore-ers); see also Jordan, 731 F.Supp. at 657-58 {(concluding that security interest enforcers incur liability only under the illegal dispossession subsection because " 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting Russello v, United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))). .

. 678 F.3d 1211, 1217 (11th Cir.2012).

. Id. at 1218 n. 3. The Consumer Financial Protection Bureau brief on which the court also relies similarly states: "The Court need not decide in this case whether foreclosure by itself constitutes debt collection activity covered by the Act." Brief of the Consumer Financial Protection Bureau as Amicus Curiae in Support of Plaintiffs-Appellants and Reversal at 32, Birster v. Am. Home Mortg. Servicing, Inc., 481 Fed. Appx. 579 (11th Cir.2012) (No, 11-13574) (emphasis added), available at, http://consumerfinance.gov/f/ ~- 201112._CFPB_Birster-amicus-brief. pdf.

. See, eg., Beepot v. J.P. Morgan Chase Nat'l Corporate Servs., 57 F.Supp.3d 1358, 1376 (M.D.Fla.2014) (dismissing FDCPA claim "[ble-cause foreclosing on a security interest is not debt collection activity under the provisions of *233 the FDCPA" (citing Warren v. Countrywide Home Loans, Inc., 342 Fed.Appx. 458, 460-61 (lith Cir.2009))); Freire v. Aldridge Connors, LLP, 994 F.Supp.2d 1284, 1287-88 (8.D.Fla.2014) ("[In the Eleventh Circuit, the filing of a mortgage foreclosure action will constitute debt collection activity only when the complaint seeks also to collect on the note...." (citing Reese, 678 F.3d at 1217)).

. Former AS 34. 20.070(b)(4)-(7), (c) (2003).

. 15 U.S.C. § 1692g(d); see Wood v. Lerner Sampson & Rothfuss, No. 1:13CV1669, 2014 WL 4249785, at *6 (N.D.Ohio Aug. 27, 2014) ("Plaintiff's citation to Glazer ... for the proposition that 'mortgage foreclosure is debt collection under the Act{,]' is unavailing for purposes of the § 1692g(a) claim.... {Section 1692g(d)] is perfectly clear that a legal pleading[, such as a foreclosure complaint,] is not an 'initial commu- .- nication.'" (first alteration and emphasis in original) (citation omitted) (quoting Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 455 (6th Cir. 2013))).

. See Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,101 (Dec. 13, 1988) [hereinafter FTC Staff Commentary] (emphasis added); sée also Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir.2003) (noting that the FTC's interpretations of the FDCPA can help "shed light on the statute's meaning"); Dietz v. Quality Loan Serv. Corp. of Wash., No. C13-5948 RJB, 2014 WL 5343774; at *2 (W.D.Wash. Oct. 20, 2014) ('The Notice of Default and Notice of Sale(s) are statutorily required notices under [state law]. They are not 'debt collection' activities separate from the non judicial process.");" Fouché v. Shapiro & Massey LLP., 575 F. Supp 2d 776 787—88 (S.D.Miss.2008) (stating notice that i is "necessary to foreclose under the deed of trust" with purpose of "satisfy[ing] conditions precedent to a foreclosure on the mortgage" subjected law firm to liability only under 111ega1 dispossession subsection).
The court relies on the Corisumer Finance Protection Bureau's recent amicus position to the contrary in a pending Ninth Circuit Court of Appeals case. The Bureau came into existence in 2010, after all of the events in this case took place. It apparently supplants the FTC as the "official" FDCPA agency, but-has not yet promulgated any formal interpretations: It remains to be seen how the Bureau's amicus position will be-treated by the Ninth Circuit panel.

. 15 U.S.C. § 1692e(4) (emphasis added).

. See AS 34.20.070.

. 15 U.S.C. § 1692d(4).

. FTC Staff Commentary, 53 Fed. Reg. at 50,-105; see also AS 34.20.070(b) (requiring that notices of default be recorded); AS 34.20.080(a)(2) (requiring public notice before non-judicial foreclosure sale).

. 15 U.S.C. § 1692(e); see also id. § 1692n (''This subchapter does not annul, alter, or affect, or exempt any person subject to [its] provisions ... from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.").

. As the court recognizes, it would be unfair to penalize Alaska Trustee for including FDCPA disclaimer language in its notices of default; the law in this area is far from clear, and Alaska Trustee asserted it was simply acting "out of an abundance of caution." See Golliday v. Chase Home Fin., LLC, 761 F.Supp.2d 629, 636 (W.D.Mich.2011) (noting security interest enforcers are debt collectors "for the narrow purposes of [the illegal dispossession subsection]" and therefore should not be faulted for including FDCPA disclaimer language in letters to mortgagors).

. 15 U.S.C. § 1692f(6).

. See, eg., Boyd v. J.E. Robert Co., No. OS-CV-2455(KAM)(RER), 2013 WL 5436969, at *9-12 (ER.D.N.Y. Sept. 27, 2013), (declining to follow Glazer because it "overlooks [a] basic statutory distinction" "between the 'collection of any debts' and 'the enforcement of security interests' " (quoting 15 U.S.C. § 1692a(6))); Derisme v. Hunt Leibert Jacobson PC., 880 F.Supp.2d 311, 323-26 (D.Conn.2012); Gray v. Four Oak Court Ass'n, 580 F.Supp.2d 883, 887-88 (D.Minn.2008).

, See, eg., Goodin v. Bank of Am., N.A., 114 F.Supp.3d 1197, 1207 (M.D.Fla.2015) ("As the foreclosure complaint sought to collect on the note and the security interest, it constituted debt collection activity and a violation of the FDCPA."); Doughty v. Holder, Nos. 2:13-cv-00295-LRS to 00297-LRS, 2014 WL 220832, at *3, 6 (E.D.Wash. Jan. 21, 2014) (holding that "{slo long as the foreclosure proceedings, be they non-fudicial or judicial, involve no more than mere enforcement of security interests," only the illegal dispossession subsection applies). Natividad v. Wells Fargo Bank, N.A., No. 3:12-cv-03646 JSC, 2013 WL 2299601, at *8 (N.D.Cal. May 24, 2013) ("[Plersons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for {non-judiciall foreclosure may be considered debt collectors."); Calvert v. Alessi & Koenig, LLC, Nos.2:11-CV-00333,00411, 00442, & 01004-LRH-PAL, 2013 WL 592906, at "4 (D.Nev. Feb. 12, 2013) (holding letters sent to debtor that were not part of Nevada's statutory "lien enforcement process" were "part of the debt collection process subject to the full battery of FDCPA provisions," whereas other letter required by statute was "subject to the lighter regulation of FDCPA section 1692f(6)"); Beadle v. Haughey, No. Civ.04-272-SM, 2005 WL 300060, at *3-4 (D.N.H. Feb. 9, 2005) ("'Because defendants were executing a non-judicial foreclosure proceeding rather than collecting a debt, their activities are ... subject [only to the illegal dispossession subsection].").

. Accordingly, I do not address Stephen Routh's personal liability under the FDCPA or the superior court's injunction under the UTPA.