**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JUDITH W. MAYNARD,

      Plaintiff-Appellant,

v.

BRYAN W. CANNON, P.C.,

      Defendant-Appellee.

No. 08-4181

(D. of Utah)

(D.C. No. 05-CV-335-DAK)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

This appeal requires us to consider whether a Utah law firm violated a homeowner's rights under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et. seq.*, when it attempted to foreclose on a mortgage in arrears. The law firm commenced a non-judicial foreclosure action against the homeowner by filing a notice and claim as required by Utah law. In response to the homeowner's letter disputing the debt, the law firm provided loan documents and a reference to the amount of the remaining balance on the mortgage. The

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

homeowner contends the law firm's actions amounted to an unlawful attempt to collect a debt.

Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the law firm's conduct did not violate the FDCPA. We therefore AFFIRM the district court's grant of summary judgment in favor of the law firm.

## I. Background

Household Finance Corporation made a loan to Judith Maynard in the amount of $131,536 for her 1999 purchase of a new home. Household retained a security interest in the home, as set forth in a deed of trust, which gave Household power of sale over the home to secure compliance with the terms of the loan.

Some time after closing the loan, Household and Maynard became engaged in a dispute over allegedly delinquent mortgage payments and the status of the loan. Eventually, Maynard ceased making payments on the loan, and Household decided in early 2004 to foreclose on the property.

In March 2004, Household transferred the deed of trust to a law firm, Bryan W. Cannon, P.C. Cannon was recorded as the new trustee, although Maynard was not informed of the transfer until later.

Cannon then initiated a non-judicial foreclosure by filing a notice of default with the county recorder. Under Utah law, a non-judicial foreclosure is commenced by a trustee filing a notice of default, and after a three-month no-action period, the trustee can sell the trust property at public auction. UTAH

-2-

CODE ANN. §§ 57-1-23, -24, -27. A non-judicial foreclosure differs from a judicial foreclosure in that the sale does not preserve to the trustee the right to collect any deficiency in the loan amount personally against the mortgagor. *See* 59A C.J.S. *Mortgages* § 874. Thus, a non-judicial foreclosure allows the trustee to obtain proceeds from the sale of the foreclosed property, and no more. Under Utah law, for Household to recover any deficiency against Maynard personally, it would be required to commence a separate contract action as permitted under the loan documents. *See* UTAH CODE ANN. § 57-1-32 ("[W]ithin three months after any sale of property under a trust deed . . . an action may be commenced to recover the balance due on the obligation for which the trust deed was given as security.").

On March 25, 2004, Cannon informed Maynard of the foreclosure proceedings by mailing a notice of the substitution of trustee to her, a copy of the notice of default, and an FDCPA notice. The notice of default stated the "obligation included a Note for the principal sum of $131,536.06," Aplt. App., Vol. I, p. 55, thereby identifying the home loan as the relevant debt. The notice further stated a default "has occurred in that payment has not been made of: Monthly payments in the total sum of $10,109.59, together with costs of foreclosure up to $1,500.00." *Id.* The notice thus set forth the principal amount of the loan, and the amount which Maynard was alleged to be behind in her

-3-

payments. The notice did not request any payments or provide information regarding any right to cure the default.

Cannon included the FDCPA notice presumably in an effort to comply with FDCPA requirements for debt collectors. Thus, the notice contained information about Maynard's right to dispute the validity of the debt, and contained the following statement: "THIS NOTICE IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THIS PURPOSE." *Id.*, p. 54.

After receiving this notice, Maynard disputed the validity of the mortgage default. In a letter dated April 7, 2004, she informed Cannon that she "dispute[d] the debt in its entirety." *Id.*, p. 59. The letter detailed the history of Maynard's disagreements with Household and concluded with a demand that Cannon "provide me with a full and complete validation of this debt to me," *id.,* including documents and additional information relating to the mortgage.

On April 12, 2004, Cannon responded to Maynard's letter, explaining:

> [A]ll we are required to confirm is the amount that is being claimed as being owed and the identity of the individual against whom that claim is being made. We do hereby provide for you a copy of the Deed of Trust which you signed which shows a principle [sic] sum of $130,536.06. . . We hereby, upon review of this file, confirm that Judith W. Maynard is the individual against whom the claim is being made and that the amount of the claim is $131,536.06, together with interest as may be appropriate under the law.

-4-

*Id.*, p. 64. The April 12 letter did not provide a default amount, nor did it request that any payment be made on the default, either to Cannon or to Household. The letter closed with a statement that Cannon had no obligation under the FDCPA to provide any additional information.

Although Maynard replied to the April 12 letter, Cannon did not respond, and initiated no further communication with Maynard after that point. According to the record, moreover, Cannon took no further steps towards foreclosure on the house. During this time, however, Maynard apparently engaged in settlement discussions directly with Household and later reached an agreement allowing her to pay off the mortgage. At Household's request, in June 2004 Cannon withdrew the notice of default, thereby ending its foreclosure action.

Maynard filed suit against Cannon in April 2005, alleging Cannon violated a number of provisions of the FDCPA by (1) initiating a non-judicial foreclosure and (2) sending the April 12 confirmation letter. Cannon filed a motion for summary judgment, which the district court granted. Maynard timely appealed.

## II. Analysis

Maynard contends the district court erred in granting summary judgment on her FDCPA claims. On an appeal from a grant of summary judgment, we review the district court's resolution of the factual and legal issues de novo. *Johnson v. Riddle*, 443 F.3d 723, 724 (10th Cir. 2006).

The FDCPA prohibits the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Maynard contends Cannon violated the FDCPA in three ways: (1) using deceptive collection tactics, (2) attempting to collect amounts not authorized by law, and (3) engaging in debt collection activities before a disputed debt had been verified. *See* 15 U.S.C. §§ 1692e, 1692f, 1692g.

To prevail on a claim under the FDCPA, a plaintiff must prove that a "debt collector['s]" effort to collect a "debt" from a "consumer" violated some provision of the FDCPA. *See Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005). The parties do not dispute that Maynard is a "consumer" as defined by the Act,[1] but disagree whether Maynard presented evidence of the other two elements of an FDCPA claim—first, whether Cannon is a "debt collector" for purposes of the Act and, second, whether it attempted to collect a debt.

We examine each element and conclude that while Cannon is a debt collector, its actions here did not amount to an unlawful attempt to collect a debt.

*A. Debt Collector*

Cannon contends that it is not a debt collector for purposes of this litigation, because in this instance it was only enforcing a security interest in the

---

[1] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

underlying collateral securing the debt. Cannon claims the FDCPA does not regulate the enforcement of a security interest through non-judicial foreclosure actions. In contrast, Maynard contends Cannon is a debt collector for purposes of the FDCPA by regularly collecting debts owed to another.

We agree with Maynard. Whatever the merits of its argument concerning non-judicial foreclosures, Cannon admitted it was a debt collector for purposes of this case. In its answer to Maynard's complaint, Cannon conceded it was a "debt collector" as defined by the FDCPA. Aplt. App., Vol. I, p. 36. And in the communications with Maynard at the time of the foreclosure, Cannon understood the FDCPA to apply and acted accordingly. For instance, Cannon included various notices required by the FDCPA and followed the other procedural requirements of the Act. At his deposition, Bryan Cannon testified his firm does only "collections and foreclosures," *Id.*, p. 319:22–320:4; 202:16–25, confirming, at the very least, Cannon regularly and principally attempts to collect debts. Later in seeking summary judgment on Maynard's claims, Mr. Cannon conceded he and his firm "already admitted that he is a debt collector under the FDCPA, and that his actions in regards to his correspondence in the foreclosure action against the Plaintiff was covered by that Federal Statute." *Id.*, p. 88.

We are thus satisfied Cannon is a debt collector for purposes of the FDCPA.

*B. Debt Collection*

Maynard must demonstrate Cannon was engaged in debt collection—either when it filed the foreclosure action on her home, or in the April 12 letter Cannon sent to Maynard. 15 U.S.C. § 1692a(6).[2] If neither of these activities were an attempt to collect a debt, the FDCPA does not apply.

1. *Non-Judicial Foreclosure*

The first question we must address is whether a non-judicial foreclosure qualifies as debt collection activity under the FDCPA.

The FDCPA defines a debt as "any obligation or alleged obligation of a consumer *to pay money* arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . ." 15 U.S.C. § 1692a(5) (emphasis added). While it is clear Maynard's mortgage itself qualifies as a debt, we have not previously considered whether a non-judicial foreclosure amounts to an attempt to collect that debt. When a debt has yet to be reduced to a personal judgment against a mortgagor, a non-judicial foreclosure does not result in a mortgagor's obligation *to pay money*—it merely results in the sale of the property subject to a deed of trust.

---

[2] The district court held that the filing of the notice of default did not violate 15 U.S.C § 1692c(b) (prohibiting communications about the consumer's debt with third parties). *Maynard v. Cannon*, 2008 WL 2465466, at \*5. Maynard did not challenge this ruling in her opening brief, Aplt. Rep. Br. 1, and therefore any challenge to it is waived.

Other courts have applied the FDCPA to actions of debt collectors engaged in non-judicial foreclosure of mortgages or liens. In several cases, debt collectors engaged in other conduct that was indisputably debt collection activity, leaving unanswered the question of whether the FDCPA applies to non-judicial foreclosure when that is the only contested activity. *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (FDCPA applies to actions of attorneys hired to initiate non-judicial foreclosure; concerned over the "enormous loophole" that would result otherwise, but also relying on direct requests for payment to conclude that FDCPA applies); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233–36 (3d Cir. 2005) (FDCPA applies to collection of overdue water and sewer obligations via lien filed against consumer's house; also relied on letters requesting payment).

In contrast, several district courts have distinguished between judicial and non-judicial foreclosures and concluded the FDCPA applies to the former but not the latter. In general, these courts have relied heavily on one principal distinction between the two types of foreclosure—the presence or absence of a personal judgment against the mortgagor. In other words, these courts have found non-judicial foreclosures are not debt collections, because they do not require the consumer to pay any money at all. *See McDaniel v. South & Assocs.*, 325 F. Supp. 2d 1210, 1217 (D. Kan. 2004) (*judicial* foreclosure is subject to the FDCPA, because it seeks a personal judgment against the consumer;

distinguishing cases finding that *non-judicial* foreclosures are not subject to FDCPA); *Rosado v. Taylor*, 324 F. Supp. 2d 917 (N.D. Ind. 2004) (ruling that issuing a foreclosure summons and complaint did not amount to an attempt to collect a debt); *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money," and is "not an attempt to collect funds from the debtor," therefore the FDCPA does not apply); *Beadle v. Haughey*, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) (attorneys who "conducted a non-judicial foreclosure, and did not seek judgment against the plaintiffs personally," were not subject to the FDCPA).

In a recent case not involving foreclosure, the Seventh Circuit offered useful guidance. While emphasizing that "a communication from a debt collector to a debtor is not covered by the FDCPA unless it is made 'in connection with the collection of any debt,'" *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) (quoting 15 U.S.C. §§ 1692c, 1692e), the court held this did not require "an explicit demand for payment." *Id.* at 380. Relying on its previous precedent, the court concluded "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Id.* at 385. Even explicit statements from the debt collector expressing that a letter was not meant to collect a debt were unavailing. The court

-10-

emphasized the true purpose of the letters in this case was to collect the debt—whether through settlement or otherwise—by placing pressure on the consumer. *See id.* at 386. For this reason, the court held the FDCPA applied.

Apparently, the initiation of foreclosure proceedings in this case was intended to encourage Maynard to pay her debt—indeed, that is precisely what happened when the threat of foreclosure spurred settlement. In fact, Cannon's initial communication with Maynard included an FDCPA notice, which stated it was "sent in an attempt to collect a debt." Even so, the inclusion of the FDCPA notice is legally irrelevant. *See id.* at 386 n.3 (a similar notice "does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance"); *Rosado*, 324 F. Supp. 2d at 925 n.4 (this type of "notice cannot expand the scope of the FDCPA, causing it to apply to things to which it otherwise would not apply"). Therefore, the language of the notice does not inevitably lead to the conclusion that Cannon's non-judicial foreclosure actions were FDCPA-covered debt collection activity.

We need not resolve this debate here. For the purposes of this case, we assume non-judicial foreclosures are covered by the FDCPA. But even assuming a non-judicial foreclosure is debt collection, we must still consider whether Cannon violated the FDCPA in its communications with Maynard. As Maynard contends, Cannon communicated with her in two ways: by filing and sending the

-11-

notice of default, and by responding to her April 2004 letter requesting information about her loan. Neither provides a basis for liability.

2. *Notice of Default*

As explained above, Maynard waived her arguments regarding the notice of default by not raising them in her opening brief. Even if she had, her argument would be unpersuasive. The crux of her argument is that the notice violated the FDCPA by notifying third parties and listing an incorrect amount of the loan and outstanding balances. The district court concluded Maynard consented to the filing of the notice in her loan documents and that she never demonstrated the claimed amounts were inaccurate by showing the actual loan principal and default amounts.

We agree with the district court. The filing of a notice of default does not in and of itself violate the FDCPA, and it is undisputed that Maynard agreed the foreclosure could be filed in the case of default. In any event, Cannon provided the required FDCPA disclaimers and gave Maynard the opportunity to dispute the alleged default. And as the district court found, Maynard never established the notice was materially incorrect or misleading as to the principal amount and the amount of default. The notice was simply the first step in a foreclosure on her house, not a demand for payment of a sum certain amount.

In these circumstances, Maynard has not demonstrated a violation of the FDCPA.

*3. April 12, 2004 Letter*

Maynard's primary contention is that Cannon violated the FDCPA in its April 12, 2004 letter. On April 7, 2004, after receiving the notice of foreclosure, Maynard sent Cannon a letter disputing the entire debt and requesting backup loan documents and confirmation of the amount of the disputed claim. In response, on April 12 Cannon sent a letter providing copies of the deed of trust, the loan agreement, and a itemization of the loan amount at $131,536.06. Further, Cannon informed Maynard, "We hereby, upon review of this file, confirm that Judith W. Maynard is the individual against whom the claim is being made and that the amount of the claim is $131,536.06, together with interest as may be appropriate under the law." Aplt. App., Vol. I, p. 64.

Maynard contends the April 12 letter violated the FDCPA, and points to three provisions of the Act supporting liability.

a. *15 U.S.C. § 1692g*

Maynard first argues the April 12 letter violated § 1692g. In the event a consumer disputes any portion of a debt being collected, § 1692g(b) requires that "the debt collector *shall cease collection of the debt*, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." (Emphasis added.) The statute does not detail what information must be included in the verification.

-13-

In its April 12 letter, Cannon listed the initial amount of the mortgage as $131,536.06, provided the deed of trust, a copy of the loan agreement, and various other loan documents. Maynard claims the listed loan amount was incorrect, that she in fact owed a different amount, or that Cannon should only have listed the amount by which this loan was in default, since under Utah law she had the right to pay only the defaulted amount to reinstate the mortgage. *See* UTAH CODE ANN. § 57-1-31 (a debtor can reinstate a trust deed by paying only the defaulted amount within three months of initial default). Additionally, Maynard contends Cannon violated its responsibility to verify the loan. We disagree.

This provision is not intended to give a debtor a detailed accounting of debt to be collected. Instead, "[c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Chaudry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (internal punctuation and citation omitted). Clearly, all Cannon was required to do under § 1692g was to identify the defaulted mortgage amount that was the basis for the foreclosure. In any event, at the time she received the letter Maynard already had obtained the disputed arrearage from the notice of default and directly from Household, from which she had obtained payoff amounts. Cannon was seeking to *foreclose* on the house, not *collect* the arrears on the mortgage, and so the fact that the April 12

-14-

letter did not state the amount of default is irrelevant. Cannon correctly identified the original loan and the original lender, which is all that § 1692g required it to do.

Maynard's interpretation would take us to an absurd result. For example, by the time Cannon sent this letter, Maynard actually owed *more* than the original principal amount, due to accrued interest. She therefore is seeking to impose liability on a debt collector who either (1) overstated the amount due, by listing the original loan amount instead of the arrearage, or (2) understated the amount due, by listing only the original principal amount, not the total amount she owed with accrued interest. Her reasoning, that any incorrect statement of the amount owed, no matter in which direction the debt collector erred, nor the amount of the error, results in strict liability for the debt collector, is unfounded in the text of the FDCPA and is at odds with its purpose of preventing "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692. The FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless. And, as the district court found, Maynard had obtained loan payoff information from Household and could not have been confused or misled by the information set forth in the letter.

Finally, § 1692g is designed to prevent debt collection only in the case of a debt collector who has not performed the requested debt verification. *See id.* ("[T]he debt collector shall cease collection of the debt . . . until the debt

-15-

collector obtains verification . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.").  This section does not require a debt collector to make a verification—a debt collector can simply cease collection efforts if it does not wish to make a verification.

That is what happened here.  Cannon had no further communications with Maynard after the April 12 letter that is asserted as the violation of § 1692g.  This section only prohibits *further* debt collection until the debt has been verified—it does not ban the communication to the debtor that this section requires.

Because we conclude Cannon complied with § 1692g(b) by naming the original creditor, and correctly identifying the mortgage amount in default, and because Cannon did not engage in any communication with Maynard after its letter, we conclude Cannon did not violate § 1692g.

b.  *15 U.S.C. § 1692f(1)*

Maynard next claims the April 12 letter was an attempt to collect an amount not permitted by law, in violation of § 1692f(1).  She apparently bases this claim on the premise that Cannon was attempting to collect more money than she was obligated to pay under Utah law—the default amount.  We disagree with her interpretation.

Section 1692f(1) prohibits "unfair or unconscionable means to collect or attempt to collect any debt[, consisting of t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation)

-16-

unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The loan amount Cannon set forth in the letter *was* the legal and contractual basis for the foreclosure, and Cannon was merely attempting to foreclose on Maynard's property, as permitted by Utah law. Furthermore, Cannon's actions—whether in writing the April 12 letter or in initiating the non-judicial foreclosure—were authorized by the loan agreement, permitted by the deed of trust, or contemplated by the FDCPA.

    *c.* *15 U.S.C. § 1692e(2)(A)*

Finally, Maynard contends Cannon misrepresented the character, amount or legal status of the debt, in violation of § 1692e(2)(A). She claims Cannon misrepresented that the principal of her mortgage was "immediately due and payable." Aplt. Br. 18. Tellingly, she does not cite to any portion of Cannon's letter that states this—nor could she, for this letter says no such thing.

Because this claim is based on no more than recharacterizing the contents of Cannon's letter, we agree with the district court that Maynard has not presented sufficient evidence of a violation under this provision.

### III. Conclusion

In sum, Cannon's notice of default and its April 12, 2004 letter did not violate the FDCPA.[3] For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Cannon.

> Entered for the Court
>
> Timothy M. Tymkovich
> Circuit Judge

---

[3] Maynard also appealed the district court's entry of a protective order limiting the disclosure of personal information about Cannon's former employees. Since we have concluded Cannon did not violate the FDCPA, and affirm the district court's grant of summary judgment on her complaint, this claim is moot.