ANALYSIS
I. THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
The defendants assert that they are entitled to summary judgment on the two claims asserted against them.[5] The court *1314 first addresses the defendants' arguments regarding the FDCPA claim. It then turns to the UCSPA claim.
A. The FDCPA Claim
Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle , 305 F.3d 1107, 1117 (10th Cir. 2002).
Sexton asserts that the defendants violated three provisions of the FDCPA. First, he argues that they engaged in "conduct the natural consequence of which is to harass, oppress, or abuse [him] in connection with the collection of a debt." § 1692d. Second, Sexton contends that the defendants used "false, deceptive, or misleading representation[s] or means in connection with the collection of [a] debt." § 1692e. Third, he alleges that the defendants used "unfair or unconscionable means to collect or attempt to collect [a] debt." § 1692f.
The defendants argue that they cannot be held liable under the FDCPA for a variety of reasons. The court addresses each argument separately.
1) The Definition of "Debt"
First, the defendants argue that they cannot be held liable for violations of the FDCPA because they were not attempting to collect a "debt" as that term is defined under the Act. Under the FDCPA, "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The defendants assert that the default judgment of $ 3,764.90 for "treble damages," attorney fees, and court costs, together with $ 46.10 in daily damages until Sexton removed his mobile home, does not constitute a consumer debt that falls within this definition. Poulsen, in particular, admits that Sexton had continued to pay his rent and contends that he was merely pursuing an eviction action based upon a rule violation. Poulsen asserts that "[n]o rent, no money, and no financial agreements were sought to be enforced during those transactions leading to Evergreen obtaining a judgment."
This contention is patently false. The complaint sought "treble damages assessed pursuant to Utah Code Annotated, Section 78B-6-811 beginning March 23, 2017 at the rate of $ 46.10 per day," which is roughly the triple daily rent for the *1315 mobile home lot. The affidavit in support of the motion for default judgment also stated that Sexton "owes for treble damages assessed pursuant to Utah Code Annotated, Section 78B-6-811... at the rate of $ 46.10 per day totaling $ 2,719.90 treble damages from March 23, 2017 to May 25, 2017." Utah Code § 78B-6-811(2) states that if a lessee defaults in an unlawful detainer action, the court shall "assess the damages resulting to the plaintiff." In particular, a landlord may recover treble damages for "amounts due under the [lease] contract, if the alleged unlawful detainer is after default in the payment of amounts due under the contract." § 78B-6-811(2) - (3). Because this statute permits treble damages for the harm suffered by the landlord in cases where the tenant has defaulted on rent payments, and because Poulsen clearly calculated the treble damages amount awarded in the default judgment from the rent due under the lease, the lion's share of the default judgment is attributable to Poulsen's representations that Sexton owed unpaid rent.[6] Rent qualifies as an obligation "of a consumer to pay money arising out of a transaction ... primarily for personal, family, or household purposes" within the meaning of the FDCPA. See 15 U.S.C. § 1692a(5).
Poulsen's argument that the default judgment does not constitute consumer debt because Sexton had in reality satisfied his rent obligations rings hollow. The definition of "debt" includes "any obligation or alleged obligation of a consumer to pay money." Id. (emphasis added). The fact that an alleged obligation is unfounded will not exempt a debt collector from liability.[7] The court concludes, therefore, that the default judgment at issue in this case qualifies as a "debt" under the FDCPA.
2) The Definition of "Debt Collector"
The defendants also argue that they do not qualify as debt collectors under the FDCPA. The term "debt collector" includes any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). But the Act explicitly excludes from this definition, "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." § 1692a(6)(C). Both Reitz and Hitesman (the constable defendants) and Poulsen argue that they are exempt from liability under this definition because they are officers of the State of Utah attempting to collect a debt within *1316 the scope of their official duties. The constable defendants also argue that they are entitled to the benefit of an exclusion from the definition of "debt collector" for "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." § 1692a(6)(D). The court first addresses the constable defendants' arguments. The court then turns to Poulsen's argument.
i. The Constable Defendants
The court agrees that constables are officers of the State of Utah. "To qualify as a constable, a person shall be certified as a special function peace officer in the state." UTAH CODE § 17-25a-2(1). Constables are appointed by either a city or county, and their position may be revoked at any time for cause or if the constable's peace officer certification is ever suspended or revoked. § 17-25a-1. A constable may execute the orders of a judge or writs issued by the clerk of the court by seizing and disposing of property, entering a home by force and removing a tenant, or serving a warrant of arrest. §§ 17-25-1(1), 17-25a-3(2), 78B-6-812(1), (3); UTAH R. CIV. P. 64(a)(7), (d). While performing official duties, a constable must prominently display a badge or other credentials identifying the person as a constable and stating the person's name and the county or city that appointed the constable. § 17-25-6(1). In short, Utah endows constables with the authority to conduct official actions on behalf of a court that other private individuals cannot legally perform.
While it appears that the Tenth Circuit has not addressed this issue, the Third Circuit has confirmed that individuals who perform the duties of a constable are officers of the state. The court in Heredia v. Green , 667 F.2d 392, 393, 394 (3d Cir. 1981), held that a Philadelphia landlord and tenant officer, who performed many of the same duties of a Utah constable, was an officer of the state within the meaning of 15 U.S.C. § 1692a(6)(C). See also Heredia v. Green , 504 F.Supp. 896, 898 (E.D. Pa. 1980) (finding that a landlord and tenant officer performed many of the same duties previously performed by a constable). This court agrees that a constable is an officer of the state who is excluded from the definition of "debt collector" under the FDCPA.
This conclusion, however, does not automatically shield the constable defendants from liability. An officer of the state is immune from liability under the FDCPA only while collecting a debt in the performance of his or her official duties. A constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions. The constable defendants argue that all of their actions were sanctioned by the order of restitution entered by the state court on May 31, 2017 and the writ of execution entered by a court clerk on June 22, 2017. The court disagrees.
First, there is evidence that the constable defendants performed actions that were not authorized by the order of restitution, which permitted the constables to remove the mobile home, Sexton, and any other residents from the lot in order to restore possession to Evergreen Village. Instead of removing the mobile home and storing it until Sexton could claim it after paying storage costs, as contemplated by Utah Code § 78B-6-812(3), the constables seized the mobile home and all of its contents, changed the locks, and told Sexton that the trailer belonged to Evergreen Village. In other words, the constables seized the mobile home and its contents for the benefit of Evergreen Village rather than removing it. These actions went beyond the scope of the order of restitution.
*1317 Second, Sexton produced evidence that the constable defendants exceeded the scope of the writ of execution, which authorized them to seize and sell enough of Sexton's "non-exempt personal property and real property" to satisfy the default judgment. Sexton argues that his mobile home should have been excluded from seizure to satisfy the debt under the homestead exemption. "An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding ... $ 30,000 in value if the property claimed is the primary personal residence of the individual." § 78B-5-503(2)(a). This homestead exemption applies to "a mobile home in which the claimant resides." § 78B-5-503(2)(c). Sexton also argues that because the application for writ of execution valued the mobile home at $ 1,000, the constables should have known that it was completely exempt from seizure under the terms of the writ of execution.
The constable defendants argue that the homestead exemption did not apply for two reasons. First, they assert that the mobile home was no longer Sexton's primary residence when the June 22, 2017 writ of execution issued because the constables had evicted him six days earlier. In other words, the constables argue that they could accomplish in two steps what they could not legally do in one step. The court disagrees. As noted above, the constables exceeded the instructions given by the court to remove the mobile home from the lot when they seized the home and evicted Sexton from his own trailer instead. An illegal act cannot be the basis for depriving Sexton of the homestead exemption. Moreover, Sexton's six-day absence from his home due to the eviction is insufficient to fundamentally change its status as his primary residence.
The constable defendants also argue that Utah law permitted them to seize and hold the mobile home despite the homestead exemption. According to the constable defendants, Utah law placed the burden on Sexton to prove that the seized property was exempt. They point to Rule 64E(d) of the Utah Code of Civil Procedure, which permits a defendant to request a hearing on a writ of execution. At this hearing, the court determines whether any seized property is exempt. UTAH R. CIV. P. 64E(d)(2). If the court determines that any property is exempt at the hearing, it then enters an order directing the constable to release the property. Id. The constable defendants note that in this case, Sexton objected to the writ of execution issued against him and the state court set a hearing for August 1, 2017. But the parties later cancelled the hearing to accommodate settlement negotiations. The constable defendants contend that because the state court never entered an order directing them to release the mobile home as exempt property, their actions designed to deny Sexton possession of his mobile home and prevent him from removing or selling it were legal and within the scope of their official duties.
If the writ of execution had directed the constables to seize the mobile home or to seize any property that they wished to seize, the constables' argument would have merit. Under that scenario, the constables could have legally seized the mobile home despite its exempt status and the constables would have been required to release it only if the state court found that it was exempt and ordered the constables to release the mobile home. But the writ of execution did not direct the constables to seize the mobile home. It directed them to seize and sell only "non-exempt personal property and real property." The writ placed the onus on the constables to determine which of Sexton's property was exempt, *1318 which of his property was non-exempt, and to seize and sell only the non-exempt property. Because the writ of execution defined, at the outset, the limits of the constables' authority to seize and hold property, the restrictions set forth in the writ trump any procedures outlined in Rule 64E. The constables, therefore, exceeded the scope of their authority under the writ of execution by continuing to deny Sexton possession of the mobile home, which was subject to the homestead exemption.
In sum, because there is evidence that the constable defendants exceeded their authority under the order of restitution and the writ of execution, they are not entitled to summary judgment under the officer of the state exemption to liability under 15 U.S.C. § 1692a(6)(C).[8]
Finally, the constable defendants argue that they are exempt from liability under 15 U.S.C. § 1692a(6)(D), which excludes from the definition of "debt collector" "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." The court agrees that the constables cannot be liable for serving process. But, as noted above, Sexton produced evidence that the constables took other actions to collect a debt from him. Thus, the process-server exemption does not entitle the constables to summary judgment on the FDCPA claim.
ii. Poulsen
Poulsen also argues that he is an officer of the State of Utah because, as a licensed attorney, he is considered an officer of the court. He points to the language of the attorney's oath, in which attorneys swear to "discharge the duties of attorney and counselor at law as an officer of the courts of this State with honesty, fidelity, professionalism, and civility; and ... [to] faithfully observe the Rules of Professional Conduct." Under Poulsen's argument, all attorneys would be exempt from the definition of debt collector under the FDCPA. The court disagrees.
Poulsen does not cite any caselaw supporting his argument, and the court is unable to find any cases addressing this specific point either. The court concludes, however, that the term "officer of the court" as used in the attorney oath is meant to remind attorneys of their duties of honesty, professionalism, and civility towards the court. Lawyers are not literally agents of the court. They are the agents of their clients. Moreover, the Tenth Circuit has clearly held that "[a]ttorneys engaged in the collection of debts are debt collectors subject to liability under the FDCPA." Johnson v. Riddle , 305 F.3d 1107, 1117 (10th Cir. 2002) ; accord Heintz v. Jenkins , 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"). The court is bound by this holding and rejects Poulsen's argument that he is not a debt collector under the FDCPA.[9]
*1319 3) Agents of Evergreen Village
In a section of their brief comprised of two sentences, Poulsen and Skousen P.C., Poulsen, and Reitz argue that they cannot be held liable because they were agents of Evergreen Village, which has been voluntarily dismissed from the case. Hitesman similarly argues in a conclusory manner that he cannot be liable because Evergreen Village has been dismissed. The defendants do not cite any caselaw in support of this argument.
This argument is inadequately briefed. And to the extent that the court understands the argument, it is without merit. The FDCPA provides that debt collectors may be held liable if they violate the provisions of the Act while collecting a debt. 15 U.S.C. § 1692k(a). By definition, a debt collector is an individual or business that collects debts owed or allegedly owed to another individual or business. See § 1692a(6). The fact that Evergreen Village-the entity to which the debt was owed-has been dismissed from the action does not affect the claims against parties that acted as debt collectors for the company.
4) Res Judicata
Finally, Poulsen and Skousen P.C., Poulsen, and Reitz argue that Sexton's FDCPA clam is barred by res judicata. They contend that by asserting an FDCPA claim, Sexton is mounting an improper collateral attack on the default judgment that was entered by the state court. The court disagrees.
"Res judicata is an affirmative defense on which the defendant has the burden to set forth facts sufficient to satisfy the elements." Nwosun v. Gen. Mills Restaurants, Inc. , 124 F.3d 1255, 1257 (10th Cir. 1997). "Res judicata requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit." Id.
The defendants in this action cannot prove all of the elements of res judicata. Poulsen and Skousen P.C., Poulsen, and Reitz were not parties to unlawful detainer action against Sexton. More importantly, the same cause of action is not at issue in the two lawsuits. The issues in the prior unlawful detainer action were whether Sexton should be evicted and whether he owed money to Evergreen Village. The issue in this lawsuit is whether the defendants violated the FDCPA while attempting to collect a debt or alleged debt. Because the claims are not the same, res judicata does not apply. See Foster v. D.B.S. Collection Agency , 463 F.Supp.2d 783, 796-98 (S.D. Ohio 2006) (rejecting res judicata challenge to an FDCPA lawsuit based upon efforts to collect a default judgment in a debt collection action because the parties and claims in the two litigations were not identical).
5) Conclusion
For the reasons stated above, the court denies the defendants' motions for summary judgment on the FDCPA claim.
*1320 B. The UCSPA Claim
The defendants also argue that they are entitled to summary judgment on the UCSPA claim. The court first addresses whether this statute may be applied to debt collectors. The court then turns to the argument asserted by the defendants.
1) The Applicability of the UCSPA to Debt Collectors[10]
One of the main purposes of the UCSPA is "to protect consumers from suppliers who commit deceptive and unconscionable sales practices." UTAH CODE § 13-11-2(2). Thus, a "deceptive act or practice by a supplier in connection with a consumer transaction violates [the UCSPA] whether it occurs before, during, or after the transaction." § 13-11-4(1). Additionally, an "unconscionable act or practice by a supplier in connection with a consumer transaction violates [the UCSPA] whether it occurs before, during, or after the transaction." § 13-11-5(1). In short, the Act protects consumers from deceptive and unconscionable acts or practices "by a supplier in connection with a consumer transaction." The threshold questions before the court are (1) whether a person enforcing the lease agreement between Sexton and Evergreen Village can be a "supplier" and (2) whether any enforcement actions taken by the person are "in connection with a consumer transaction."
First, the defendants are suppliers within the meaning of the UCSPA. The Act defines "supplier" to mean "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions." § 13-11-3(6). Under this expansive definition, a party does not have to supply a good or service to a consumer to qualify as a supplier. A party that regularly enforces consumer transactions is also deemed to be a supplier. Thus, constables, attorneys, and law firms that regularly collect debts incurred from consumer transactions are suppliers because they enforce those transactions.
Second, the enforcement actions taken by the defendants are "in connection with a consumer transaction." The underlying agreement at issue in this case is the lease agreement between Sexton and Evergreen Village, which qualifies as a consumer transaction under the UCSPA. Woodhaven Apartments v. Washington , 942 P.2d 918, 923 (Utah 1997) ("Clearly, the UCSPA applies to leases of residential property."). The question, then, is whether the alleged deceptive or unconscionable acts by the defendants were performed "in connection with" the lease. Because the lease agreement is the document that that purportedly gave the defendants the legal right to evict Sexton, collect damages for unpaid rent, and seize his mobile home, the actions of the defendants are connected to a consumer transaction. Thus, the plain language of the UCSPA confirms that the Act may be applied to individuals or entities that enforce residential leases through evictions and property seizures.
Although other courts have not explicitly conducted a statutory analysis to determine whether the UCSPA applies to debt collectors, federal courts have applied the Act to individuals who enforce consumer *1321 transactions through collection efforts. See, e.g., Heard v. Bonneville Billing & Collections , 216 F.3d 1087 at *2 (10th Cir. 2000) (unpublished table decision) (affirming a district court's conclusion that a debt collection company "violated the UCSPA which prohibits a 'supplier' from knowingly and intentionally committing deceptive acts or unconscionable practices in connection with a consumer transaction"); Brown v. Constantino , No. 2:09CV00357DAK, 2009 WL 3617692, at *2-4 (D. Utah Oct. 27, 2009) (analyzing the Ohio and Kansas analogs to the UCSPA and concluding that "attorneys and law firms that are regularly engaged in the business of collecting consumer debt can be suppliers under the UCSPA"). This court agrees and concludes that individuals and entities that enforce a lease agreement are "suppliers" that may be liable under the UCSPA.
2) An Act Required or Specifically Permitted by Federal Law
The UCSPA does not apply to "an act or practice required or specifically permitted by or under federal law, or by or under state law." UTAH CODE § 13-11-22(1)(a). The defendants argue that because they are entitled to summary judgment on the FDCPA, this statute provides that they also cannot be held liable under the UCSPA. The court disagrees. Setting aside the question of whether avoiding liability under the FDCPA is the same thing as performing an act "required or specifically permitted by ... federal law," the court has determined that the defendants are not entitled to summary judgment on the FDCPA claim. Thus, the defendants are not entitled to summary judgment on the UCSPA claim.
II. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Sexton moves for summary judgment in his favor on the FDCPA and UCSPA claims. He asserts that the undisputed evidence shows that the defendants violated the FDCPA by using "false, deceptive, or misleading representation[s] or means in connection with the collection of [a] debt." 15 U.S.C. § 1692e. Sexton also argues that he is entitled to summary judgment because the defendants violated the FDCPA by engaging in "conduct the natural consequence of which is to harass, oppress, or abuse [him] in connection with the collection of a debt," § 1692d, and by using "unfair or unconscionable means to collect or attempt to collect [a] debt," § 1692f. He also contends that the defendants, as a matter of law, violated the UCSPA by committing deceptive or unconscionable acts to collect a debt. See UTAH CODE §§ 13-11-4 and -5.
Sexton argues that the defendant's acts of seizing the mobile home to satisfy a debt, preventing him from selling the home, attempting to collect exempt proceeds from the sale, and refusing to provide a payoff amount for the judgment violated these provisions of the FDCPA and UCSPA. Sexton, however, wishes to reserve for a jury the determination of damages. The court denies Sexton's motion for summary judgment because he failed to show that he should prevail as a matter of law on the mixed questions of law and fact imbedded in these statutory claims.
Even where underlying objective facts are free from dispute, mixed questions of law and fact imbedded in a cause of action can only be resolved on summary judgment where "reasonable minds cannot differ" on the answer to the mixed question. TSC Indus., Inc. v. Northway, Inc. , 426 U.S. 438, 450, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) ; accord Wagnon v. State Farm Fire & Cas. Co. , 146 F.3d 764, 768 (10th Cir. 1998). Questions of whether a particular act is oppressive, abusive, unfair, deceptive, or unconscionable under *1322 the FDCPA or UCSPA are mixed questions requiring the fact-finder to apply the facts to a legal standard. Moreover, a plaintiff must prove that any false representations in connection with the collection of a debt are material. Maynard v. Cannon , 401 F. App'x 389, 397 (10th Cir. 2010) (unpublished) ("The FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless."); D'Avanzo v. Glob. Credit & Collection Corp. , No. 10-CV-01572-RPM-CBS, 2011 WL 2297697, at *4 (D. Colo. Apr. 18, 2011), report and recommendation adopted , 2011 WL 2292190 (D. Colo. June 9, 2011). The materiality of a false statement is also a mixed question. TSC , 426 U.S. at 450, 96 S.Ct. 2126 ("The issue of materiality may be characterized as a mixed question of law and fact ...."); Wagnon , 146 F.3d at 768 ("The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact.").
Despite the fact that Sexton's claims under the FDCPA and UCSPA involve mixed questions of law and fact, he does not analyze whether reasonable minds could differ as to the answer to these mixed questions. Absent briefing, the court declines to conduct this analysis sua sponte.
The court also denies Sexton's motion for another reason. Sexton asserts that four separate defendants are liable as a matter of law under multiple provisions of the FDCPA and UCSPA for a number of different actions. In order to properly resolve Sexton's motion for summary judgment, the court must determine whether each defendant is liable under each provision of the FDCPA and UCSPA for each of the allegedly prohibited acts. Despite the complexity of this task, Sexton does not differentiate between the four defendants in his motion for summary judgment. He repeatedly argues generally that "the defendants" are collectively liable for multiple actions related to the collection of a debt. Because of Sexton's ubiquitous use of the term "the defendants" throughout his brief, it is difficult to pin down precisely which defendant did what to establish liability.
The court, therefore, denies Sexton's motion for summary judgment on his FDCPA and UCSPA claims.
CONCLUSION
The court DENIES (1) the motion for summary judgment brought by defendant Hitesman, [Docket 34], (2) the motion for summary judgment brought by defendants Poulsen, Poulsen and Skousen P.C., and Reitz, [Docket 40], and (3) the motion for summary judgment brought by plaintiff Sexton, [Docket 46].

Hitesman attached an affidavit to his motion for summary judgment averring that he has been a constable since 1993. He then attached a number of documents to his reply brief affirming his appointment as a constable. Sexton filed an objection to the documents attached to the reply brief, arguing that the court should disregard this evidence. Hitesman filed a response, and Sexton filed a reply. Without seeking leave of the court, these two parties then filed at least four surreply briefs in which Sexton and Hitesman accused each other of being vexatious litigants and acting in bad faith. In the end, the petty disputes evidenced in the briefing on Sexton's objection are much ado about nothing. Hitesman provided evidence that he was a constable during the events relevant to this lawsuit in the form of an affidavit attached to his motion. Sexton did not provide any evidence to dispute this fact. Thus, the additional documents Hitesman attached to his reply brief are irrelevant to the motion for summary judgment. The court overrules Sexton's objections to the new documents because the issue is moot.
Sexton also objected to several documents attached to the reply brief filed by Poulsen, Poulsen and Skousen P.C., and Reitz for the same reasons. Sexton, however, did not argue why any of the documents were essential to the defendant's motion for summary judgment. Moreover, some of the new documents were presented as evidence by Sexton himself. Because the court does not rely upon any of the new documents attached to the reply brief, the court also overrules these objections as moot.

At the hearing on this motion, Poulsen argued that the default judgment was for the rental value of the lot rather than the rent due under the lease. Setting aside the question of whether Utah Code § 78B-6-811 permits a judgment based on the rental value of the lot (even though, as Poulsen admits, Sexton paid his rent), Poulsen did not explain how a judgment for the rental value of the lot while Sexton lived on it would not be the functional equivalent of rent, and thus a consumer debt.

In making this argument, Poulsen tacitly admits that he obtained an unjust default judgment against Sexton. At best, he committed gross negligence by failing to find out whether Sexton had paid his rent or by failing to read and understand the clear language of Utah Code § 78B-6-811, which only permits treble damages for unpaid rent or damages actually incurred by the landlord. At worst, he committed a fraud on the court. Either way, Poulsen cannot profit from the fact that he obtained a default judgment for amounts Sexton did not owe. Indeed, obtaining a default judgment for amounts not actually owed could potentially be a deceptive or unconscionable act leading to liability under the UCSPA. See Estrada v. Mendoza , 275 P.3d 1024, 1028 (Utah Ct. App. 2012) (holding that an action under the UCSPA against a debt collector for allegedly obtaining inflated writs of garnishment was not barred by res judicata).

In his reply brief, Constable Hitesman also argued that the mobile home was not subject to the homestead exemption because Sexton did not serve a "a signed and acknowledged declaration of homestead." See Utah Code § 78B-5-504(1). Hitesman's argument appears to be that Sexton's declaration of homestead was not valid because it was not notarized. At the hearing on this motion, Hitesman abandoned this argument.

In their reply brief, Poulsen and Poulsen and Skousen P.C. briefly argue for the first time that they do not fit within the definition of "Debt Collector" because Sexton did not present evidence that they "regularly" collected consumer debts. But the defendants waived this argument by waiting until the reply brief to assert it. See Hill v. Kemp , 478 F.3d 1236, 1250 (10th Cir. 2007) ("[A]rguments and issues presented [in a reply brief] are waived."); Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cty., Okla. , 960 F.Supp.2d 1254, 1265 (N.D. Okla. 2013) (applying this rule to motions filed in the district court). Waiver is particularly appropriate in this case. Sexton did not present evidence of the regularity of Poulsen's and Poulsen and Skousen P.C.'s debt collection activity because the defendants did not assert this argument until it was too late for Sexton to respond.

The court asked the parties to file simultaneous briefs on the issue of whether the defendants could be deemed to be "a supplier in connection with a consumer transaction." [Docket 104]. Defendant Hitesman (to a lesser extent) and defendants Poulsen and Skousen P.C., Poulsen, and Reitz (to a greater extent) went beyond the scope of the court's order. They briefed other issues previously raised and even asserted entirely new arguments. Because this briefing went beyond the scope of the court's order and is unfair to the plaintiff, the court disregards it.